# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AKC, minor, by TED and BELLA CARROLL, her Parents and Next Friends, TED CARROLL, an individual, and BELLA CARROLL, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> LAWTON INDEPENDENT SCHOOL DISTRICT NO. 8, VICKIE CANTRELL, an individual, LYNN FITZ, an individual, and JOHN WHITTINGTON, an individual, <br><br> Defendants. | Case No. CIV-13-407-M |

## ORDER

Before the Court is defendant Lawton Independent School District No. 8's ("the District") Motion to Dismiss By Defendant Lawton Public Schools with Combined Brief in Support ("Mtn. to Dis."), filed May 24, 2013. On June 6, 2013, plaintiffs filed their response ("Pls.' Resp."), and on July 1, 2013, the District filed its reply. Based on the parties' submissions, the Court makes its determination.

I.      Introduction

Plaintiffs, Ted and Bella Carroll, the parents and next friends of AKC[1], bring this action on behalf of their minor daughter alleging several claims against the District, Vickie Cantrell ("Cantrell"), AKC's teacher; Lynn Fitz ("Fitz"), Director of Special Services at the District; and John Whittington ("Whittington"), Chief of School Security at the District. Plaintiffs allege that in late May of 2012, Mr. Carroll discovered AKC had been injured at school. Compl. ¶ 16.

---

[1] AKC is a student at Pat Henry Elementary School and during the 2011-2012 school year was a third grader in Defendant Vickie Cantrell's class. Compl. ¶ 11. AKC is autistic and her disability impairs her ability to verbally communicate.

Plaintiffs allege they were told by a teacher's aide assigned to AKC, that AKC "was subjected to 'punishments,' which included: (1) physically battering AKC and tearing AKC's underwear; and (2) abusing AKC by placing her in a dark closet as punishment." Compl. ¶ 17. Further, plaintiffs allege that the teacher's aides in AKC's class were prohibited by Cantrell from speaking to parents about matters concerning the students without Cantrell being present. Plaintiffs allege that Cantrell "threatened the teacher's aides with their jobs if they informed the parents, including the Carrolls, about the punishments." Compl. ¶ 18.

Plaintiffs further allege that the school's principal, as well as Fritz and Whittington, were aware of Cantrell's conduct and that plaintiffs were never notified of any disciplinary issues involving AKC. Plaintiffs allege that as a result of Cantrell's conduct and the District's inaction, AKC refuses to go into the school and gets upset and agitated when she enters the building, and that her overall academic progress has been impacted, as well as her ability to participate in the educational process. Plaintiffs allege that, as a result of these punishments, they have suffered damages, such as medical bills, and AKC's academic achievement has been significantly impacted, requiring AKC to receive tutoring to bring her to the appropriate academic level.

Based on these allegations, plaintiffs assert the following claims against the District: (1) 42 U.S.C. § 1983 ("Section 1983"), alleging violations of AKC's substantive due process rights based upon the infliction of excessive corporal punishment; (2) violation of the American with Disabilities Act, 42 U.S.C. §§ 12101 *et* seq. ("ADA"), alleging punishment of AKC because of her disability; (3) violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), alleging the punishment of AKC denied her participation in and the benefits of the District's educational programs; (4) deprivation of liberty without due process pursuant to the Oklahoma Constitution; (5) negligence; and (6) conspiracy. Mtn. to Dis. at 1.

II.     Standard for Dismissal

The District moves this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), to dismiss this action for lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted. "Rule 12(b)(1) motions generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation omitted). "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

The District asserts it is making a facial attack on plaintiffs' complaint, and, thus, "a challenge to subject matter jurisdiction based on legal grounds is governed by the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6)." Mtn. to Dis. at 4 (*citing Dry v. United States*, 235 F.3d 1249, 1253 (10th Cir. 2000)). Regarding the standard for determining whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. at 678 (internal quotations and citations omitted). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Finally, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

III. Discussion

    A. Exhaustion of Remedies under the Individuals with Disabilities Education Act ("IDEA")[2]

The District contends that since plaintiffs have not exhausted their administrative remedies under the IDEA, the Court does not have subject matter jurisdiction to hear plaintiffs' federal claims against the District. The Tenth Circuit has held that "if a student with a disability seeks to bring a claim for educational injuries, then he must plead to show either that he has

---

[2]The IDEA, and its predecessor the Education of the Handicapped Act ("EHA"), was designed to "ensure that all children with disabilities have available to them a free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(2000).

*Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1063-64 (10th Cir. 2002).

exhausted his administrative remedies under the IDEA or that relief he is seeking is not available under the IDEA." *Cudjoe*, 297 F.3d at 1063. The District explains that:

> In enacting the IDEA (and EHA before it), Congress created a detailed administrative procedure for parents to pursue and exhaust before filing a federal claim. The IDEA requires that children with disabilities and their parents must be given "an opportunity to present complaints with respect to <u>any matter relating to</u> . . . the provision of a free appropriate public education." 20 U.S.C. § 1415(b)(6)(A) (emphasis added). When such a complaint is filed by a person authorized to do so, the State or local educational agency must conduct an impartial due process hearing. 20 U.S.C. § 1415(f)(1)(A). Any party aggrieved by the decision of a local educational agency may appeal to the State educational agency. 20 U.S.C. 1415(g). Only after these procedures have been exhausted may a party institute a civil action in federal court. 20 U.S.C. § 1415(1)(2).

Mtn. to Dis. at 6. The District further contends that "Congress has expressly stated that parties are required to exhaust administrative remedies under the IDEA for all claims arising out of the educational services provided to a child with disabilities, including claims brought under Section 1983, Section 504, and the ADA". *Id*. at 7. Section 1415(l) of the IDEA provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

Plaintiffs contend that in this case, IDEA administrative exhaustion was not required, and that "for the exhaustion requirements to be triggered, there must be an 'educational source' and an 'adverse education consequence.'" Pls.' Resp. at 10 (*citing Cudjoe*, 297 F.3d at 1067) (internal citations omitted). Further, plaintiffs assert that "exhaustion is not required where the

5

complaint alleges physical, non-educational injuries." *Id*. at 10 (*citing Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 785 (10th Cir. 2013))[3]. The Tenth Circuit in *Muskrat* found that:

> No authority holds that Congress meant to funnel isolated incidents of common law torts into the IDEA exhaustion regime. . . . Here, the [plaintiffs] have alleged three scattered instances of potential battery. All three instances appear to have resulted from simple frustration with [the] [minor] rather than any legitimate disciplinary goal. Requiring parents to raise such claims through an IDEA administrative hearing makes little sense.

*Id.*

Having carefully reviewed plaintiffs' Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs were required to exhaust their administrative remedies under the IDEA for the claims of violation of the ADA and Section 504, but not for the Section 1983 claim. The Tenth Circuit in *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in the City and County of Den., Co.*, 233 F.3d 1268 (10th Cir. 2000) noted that:

> In essence the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required. If not, the claim necessarily falls outside the IDEA's scope, and exhaustion is unnecessary. Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem. (internal citation omitted)

*Id.* at 1274. In *Padilla,* the plaintiff sought damages solely for the physical injuries she suffered and made no complaints regarding her current educational situation. *Id*. In this case, plaintiffs allege under their ADA and Section 504 claims that as a result of the District's actions, AKC was

---

[3] In *Muskrat*, the plaintiffs were parents who brought a Section 1983 action against the school district and individual district employees, alleging that defendants unconstitutionally subjected their son to timeouts and physical abuse. *Id.* at 775.

6

denied benefits of, and participation in, the educational programs offered by the District. However, plaintiffs assert in their Section 1983 claim that, as a result of the alleged punishments, AKC's right to be free from harm and abuse was violated. The Court finds that, as a result of AKC's alleged educational injuries from the District's alleged violation of the ADA and Section 504, plaintiffs were required to exhaust their administrative remedies for these claims. Further, the Court finds that, because plaintiffs do not allege an educational injury but only allege the physical injuries allegedly committed by Cantrell, plaintiffs were not required to exhaust their administrative remedies for the Section 1983 claim. Accordingly, plaintiffs' claims that the District violated the ADA and Section 504 are dismissed for lack of subject matter jurisdiction.

B. Constitutional Claims

The District asserts that plaintiffs' Section 1983 claim should be dismissed because "liability may not be imposed on a governmental entity under Section 1983 merely because one of its employees committed a wrongful act." Mtn. to Dis. at 3 (*citing Monell v. Dep't. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978)). The Tenth Circuit, in *Meyers v. Okla. Cnty Bd. of Comm'rs*, 151 F.3d 1313 (10th Cir. 1998), held:

> A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.

*Id*. at 1316. The District asserts that AKC's constitutional rights were not violated because the level of misconduct by Defendant Cantrell did not rise to the level that would "shock the conscience" and, furthermore, plaintiffs were unable to identify any policy or custom that contributed to the alleged constitutional violation.

Having carefully reviewed plaintiffs' Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs have failed to sufficiently allege that the District's actions amounted to a constitutional violation, and that there was a policy or custom that would be considered the moving force behind AKC's constitutional rights being violated. Plaintiffs assert that in their Complaint they "describe a classroom wherein it was acceptable to physically injure, intimidate, abuse, and threaten students into submission." Pls.' Resp. at 18. The Court finds, however, that plaintiffs' Complaint only mentions that AKC was subjected to "punishments which included (1) physical battering of AKC and tearing of AKC's underwear; and (2) abusing AKC by placing her in a dark closet." Pls.' Resp. at 4. The Court finds plaintiffs have failed to plead any facts regarding the circumstances surrounding the punishments that would make it plausible that AKC's constitutional rights have been violated. Plaintiffs also contend that they "have pled facts supporting a widespread custom wherein it was acceptable to physically endanger and abuse a student and deny a parent information related to their child's education and injuries sustained during the course of the school day." Pls.' Resp. at 19. However, again, the Court finds that plaintiffs failed to actually allege any actions on the District's part that would indicate it supported Defendant Cantrell's actions in allegedly physically battering and tearing AKC's underwear, and abusing AKC by putting her in a dark closet. Accordingly, the Court finds that plaintiffs' claims of deprivation of rights protected by the Fourteenth Amendment and deprivation of liberty without due process pursuant to the Oklahoma Constitution should be dismissed without prejudice. However, the Court grants plaintiffs leave to file an Amended Complaint as to their constitutional violation claims.

C. Punitive Damages

The District asserts that plaintiffs' claims for punitive damages against the District under their Section 1983, negligence, and the Oklahoma Constitution claims must be dismissed. Plaintiffs do not address the District's argument regarding punitive damages in their response, and the Court deems that argument confessed. Accordingly, the Court finds plaintiffs' claims for punitive damages should be dismissed.

D. Conspiracy

Plaintiffs, in their Complaint, allege a claim of conspiracy against all defendants in this action.[4] In separate Orders entered this same day, the Court dismissed the conspiracy claims against defendants Cantrell, Fitz, and Whittington. Accordingly, for the reasons set forth in those Orders, the Court dismisses the conspiracy claim against the District as well.

IV. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS in part and DENIES[5] in part the Motion to Dismiss by Defendant Lawton Public Schools with Combined Brief in Support [docket no. 16] as follows:

1. The Court GRANTS the District's motion to dismiss as to plaintiffs' ADA and Section 504 claims and prayer for punitive damages for their Section 1983, negligence, and Oklahoma Constitution claims, and DISMISSES plaintiffs' ADA and Section 504 claims and plaintiffs' request for punitive damages.

2. The Court GRANTS the District's motion to dismiss, DISMISSES without prejudice plaintiffs' Section 1983 and Oklahoma Constitution claims, and GRANTS plaintiffs leave to file an Amended Complaint. Plaintiffs shall have thirty (30) days from the date of this Order to file an Amended Complaint.

---

[4] In plaintiffs' Response to Cantrell's Motion to Dismiss [docket no. 22], plaintiffs concede that the conspiracy claim is only against defendants Cantrell, Fitz, and Whittington.

[5] In its Motion to Dismiss, the District moves the Court to dismiss all of plaintiffs' claims, but the District fails to address plaintiffs' negligence claim in its Brief in Support. Accordingly, the Court finds plaintiffs' negligence claim should not be dismissed.

9

3. The Court DENIES the District's motion to dismiss as to plaintiffs' negligence claim.

**IT IS SO ORDERED this 26th day of March, 2014.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE